**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

S.D. and B.L.R., individually and on
behalf of T.D.

CIVIL ACTION NO. 25-1122

VERSUS

JUDGE S. MAURICE HICKS, JR.

CLAIBORNE PARISH SCHOOL
BOARD, ET AL.

MAGISTRATE JUDGE HORNSBY

### MEMORANDUM RULING

Before the Court is a Motion to Dismiss (Record Document 8) filed by Defendant
Claiborne Parish School Board ("CPSB"). Plaintiffs S.D. and B.L.R., individually and on
behalf of T.D., (collectively, "Plaintiffs") opposed. See Record Document 15. CPSB
replied. See Record Document 16. For the reasons explained below, the Motion is
**GRANTED IN PART and DENIED IN PART**.

### FACTUAL BACKGROUND

The following facts are taken from the Complaint and are assumed true for the
purposes of this motion.

Plaintiffs S.D. and B.L.R. bring this action individually and on behalf of their minor
daughter, T.D. See Record Document 1 at ¶¶ 4–5. Defendant CPSB employed Defendant
Dale Douglas Gryder ("Gryder") as an elementary school teacher during the relevant time
period. See id. at ¶¶ 6–8. On or about August 14, 2024, T.D. was a nine-year-old student
in Gryder's class at Homer Elementary School in Claiborne Parish, Louisiana. See id. at
¶¶ 8, 11. Plaintiffs allege that while T.D. was in Gryder's classroom and under his
supervision, Gryder reached into or under T.D.'s pants and attempted to reach into or
under her shirt. See id. at ¶ 12.

The Complaint alleges that a law enforcement investigation followed Gryder's conduct, which included review of video footage of the alleged incident and a forensic interview of T.D. See id. at ¶ 13. Plaintiffs further allege that Gryder was arrested and charged under Louisiana law with indecent behavior with a juvenile, sexual battery of a juvenile, and molestation of a juvenile. See id. at ¶ 14. At the time the Complaint was filed (August 5, 2025), the Claiborne Parish District Attorney's Office had not filed formal criminal charges against Gryder. See id. at ¶ 15.

Plaintiffs additionally allege, on information and belief, that prior to the 2024–2025 school year, parents of two or three other students had made complaints that Gryder had inappropriately touched children while working as a teacher. See id. at ¶ 16. Plaintiffs contend that CPSB failed to properly investigate those complaints and allowed Gryder to continue teaching students. See id. at ¶¶ 17, 28.

Based on these allegations, Plaintiffs filed suit against CPSB and Gryder asserting four causes of action. Plaintiffs first allege violations of T.D.'s rights under Article I, §§ 2 and 20 of the Louisiana Constitution and the Fourth and Fourteenth Amendments to the United States Constitution and seek relief pursuant to 42 U.S.C. §§ 1983 and 1988. See Record Document 1 at ¶¶ 21–26. Plaintiffs next allege that CPSB's failure to adopt and enforce policies to prevent sexual misconduct by school employees gives rise to municipal liability under § 1983. See id. at ¶¶ 28–31. Plaintiffs further assert claims under Title IX of the Education Amendments of 1972. See id. at ¶¶ 33–43. Finally, Plaintiffs assert various state law tort claims, including negligence-based and intentional tort claims, and they seek to hold CPSB vicariously liable under Louisiana law. See id. at ¶¶

44–50. After Plaintiffs filed suit, CPSB responded with this Motion to Dismiss. <u>See</u> Record Document 8.

## LAW AND ANALYSIS

### I.    Pleading and Dismissal Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To determine whether a complaint is adequate under Rule 8(a)(2), courts now apply the "plausibility" standard established in <u>Bell Atlantic Corp. v. Twombly</u>, and its progeny. <u>See</u> 550 U.S. 544 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>See id.</u> at 555–56. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding on a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." <u>Colle v. Brazos County</u>, 981 F.2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678. However, courts do not have to accept legal conclusions as fact. <u>See id.</u> Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the <u>Iqbal</u> and <u>Twombly</u> standard to survive. <u>See id.</u> at 678–79. If the complaint does

not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

## II.    Analysis

### a.    Judicial Notice of School Policies

CPSB argues that the Court may consider its published policies, including its Title IX and sexual misconduct policies, through judicial notice. See Record Document 8-1 at 12–14. Under Federal Rule of Evidence 201(b), a court may take judicial notice of a fact that is not subject to reasonable dispute because it is either generally known within the court's territorial jurisdiction or capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned.

Here, the existence of CPSB's Title IX and sexual misconduct policies is capable of accurate and ready determination from CPSB's publicly available policy manual and website. See Record Document 8-2 & 8-3. Accordingly, the Court may take judicial notice of the existence of those policies. The Court can consider the policies through judicial notice at the Rule 12(b)(6) stage even though the policies are not attached or referenced in the Complaint. See Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011). However, judicial notice at the Rule 12(b)(6) stage is limited to establishing the existence of the policies and does not extend to resolving disputed factual issues regarding the adequacy of the policies or CPSB's compliance with them. Therefore, the Court considers CPSB's policies solely for the limited purpose of establishing their existence in assessing Plaintiffs' Monell allegations.

b.  Monell Liability

CPSB first argues that Plaintiffs fail to state a claim for municipal liability under 42 U.S.C. § 1983 because the Complaint does not plausibly allege that any constitutional violation resulted from an official CPSB policy, custom, or decision by a final policymaker. See Monell v. Dept. of Soc. Services of City of New York, 436 U.S. 658 (1978); see also Record Document 8-1 at 9–14. CPSB contends that the allegations focus on Gryder's conduct and school-level failures, not CPSB action, and that Plaintiffs do not allege any Board member was informed of the complaints against Gryder. See id. at 11. CPSB further argues that Plaintiffs fail to allege the existence of a policy or widespread custom that was the moving force behind the alleged constitutional violations. See id. at 14.

Plaintiffs respond that CPSB's alleged awareness of prior complaints regarding Gryder's misconduct and failure to act constitutes deliberate indifference sufficient to support municipal liability, relying primarily on Doe v. Dallas Independent School District. See 153 F.3d 211, 218 (5th Cir. 1998); see also Record Document 15 at 4. CPSB replies that Plaintiffs' reliance on Doe v. Dallas is misplaced because it does not relieve Plaintiffs of their obligation to meet the pleading requirements of Monell. See Record Document 16 at 2.

Government entities, like a school board, can only be held vicariously liable under certain circumstances. A municipality is not liable under Section 1983 on the theory of respondeat superior. See Monell, 436 U.S. at 691. Under Monell, a municipality may be liable only if its official policy or custom is the "moving force" behind the plaintiff's alleged constitutional right violation. Rivera v. Hous. Indep. Sch. Dist., 349 F.3d 244, 247 (5th Cir. 2003) (citations omitted).

To succeed on a Monell claim against a municipality, a plaintiff must establish three elements: "(1) an official policy or custom; (2) of which a policy maker can be charged with actual or constructive knowledge; and (3) a constitutional violation whose moving force is that policy or custom." Valle v. City of Houston, 613 F.3d 536, 541–42 (5th Cir. 2010) (internal quotations and citations omitted). Official policy is generally found in "duly promulgated policy statements, ordinances or regulations." Id. A policy can also be evidenced by custom. A custom is a "persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Hinojosa v. Butler, 547 F.3d 285, 296 (5th Cir. 2008).

Under the first prong of Monell, Plaintiffs are required to allege an official policy or custom by CPSB. See Valle, 613 F.3d at 541–42. Plaintiffs do not allege that CPSB adopted a formal policy authorizing or condoning sexual misconduct by school employees. To the contrary, CPSB has adopted policies prohibiting sexual harassment and sexual misconduct. See Record Documents 8-2 & 8-3.

To state an official policy or custom, Plaintiffs appear to rely on their allegation that "parents of two to three children had made complaints that Defendant Gryder allegedly had touched children inappropriately while working as a teacher" before the 2024–2025. Record Document 1 at ¶ 16. While a custom may be established through a persistent and widespread practice even when such practice is not in an adopted policy, the practice must be so common that it could "fairly represent" an actual policy. Hinojosa v. Butler, 547 F.3d 285, 296 (5th Cir. 2008). The Complaint alleges only a small number of prior incidents involving a single employee and does not allege facts demonstrating a widespread

practice so common and well-settled as to fairly represent official CPSB policy. See Record Document 1 at ¶ 16. Therefore, even accepting Plaintiffs' allegations as true, the Complaint fails on the first prong of Monell.

Even if Plaintiffs had sufficiently alleged a custom, they must also allege that a CPSB final policymaker had actual or constructive knowledge of that custom. See Valle, 613 F.3d at 541–42. Louisiana law vests policymaking authority in the School Board itself, not individual teachers, principals, or administrators. See La. R.S. § 17:81. The Complaint alleges that there were two or three complaints against Gryder, but it does not allege that any CPSB member was informed of these complaints or that CPSB ratified or approved any alleged misconduct. See Record Document 1 at ¶ 16.

Although the Complaint alleges, in conclusory fashion, that CPSB had actual knowledge of prior complaints regarding Gryder's conduct (Record Document 1 at ¶ 35), it does not allege non-conclusory facts showing that such complaints were presented to CPSB itself (or a CPSB member) as the final policymaker. The Complaint also does not allege facts demonstrating that the alleged complaints were so widespread or persistent that knowledge may be fairly imputed to CPSB.

Plaintiffs' reliance on Doe v. Dallas does not alter this conclusion. See 153 F.3d 211. That case involved a claim that the school board was liable for delegating policymaking authority to the school principal, who failed to act after complaints of sexual misconduct by a teacher, and a claim against the school board for failure to adopt a policy addressing sexual abuse against students. See id. at 216. In Doe v. Dallas, the court held that a school board's decision to grant a principal decision-making authority was valid. See id. The remaining portion of the decision concerned the potential individual liability of

the principal, not municipal liability under <u>Monell</u>. <u>See id.</u> at 216–19. Because Plaintiffs have not named any individual school official as a defendant and do not allege facts showing that a CPSB final policymaker was deliberately indifferent, <u>Doe v. Dallas</u> is inapplicable.

Lastly, even if the first two prongs of Monell were met, Plaintiffs fail to plausibly allege that any CPSB policy or custom was the moving force behind the alleged constitutional violations. <u>See</u> <u>Valle</u>, 613 F.3d at 541–42. The Complaint does not allege a direct causal link between an official policy or custom of CPSB to the alleged deprivation of constitutional rights. Absent such allegations, Plaintiffs fail to state a claim for municipal liability under § 1983. Accordingly, the Motion to Dismiss (Record Document 8) is **GRANTED** as to the <u>Monell</u> claims.

The Court notes that although CPSB separately addressed Plaintiffs' procedural due process and Fourth Amendment claims, the Court need not reach those arguments because Plaintiffs' § 1983 claims against CPSB fail as a threshold matter under <u>Monell</u>. The Court likewise need not address Plaintiffs' § 1983 theories premised on CPSB's alleged failure to train, supervise, prevent, or protect against Gryder's misconduct, as those theories are subsumed within Plaintiffs' <u>Monell</u> claims and fail for the same reasons.

c.  <u>Title IX Claims</u>

CPSB argues that Plaintiffs fail to state a claim under Title IX of the Education Amendments of 1972 because it has adopted a Title IX policy and that S.D. and B.L.R., as parents, lack standing to assert Title IX claims. <u>See</u> Record Document 8-1 at 12–14, 17. Plaintiffs respond that CPSB's alleged awareness of prior complaints regarding Gryder's misconduct and failure to act created and permitted a hostile educational

environment in violation of Title IX. See Record Document 15 at 5–6. Plaintiffs concede, however, that any Title IX claims asserted by T.D.'s parents should be dismissed. See id. at 15.

As an initial matter, Plaintiffs concede that S.D. and B.L.R., as non-students, lack standing to assert Title IX claims. See Record Document 15 at 10. Accordingly, any Title IX claims asserted by T.D.'s parents are **DISMISSED**.

Title IX prohibits sex-based discrimination in educational programs receiving federal financial assistance. See 20 U.S.C. § 1681(a). The Supreme Court has recognized an implied private right of action under Title IX, including claims seeking monetary damages. See Franklin v. Gwinnett Cnty. Pub. Schs., 503 U.S. 60, 76 (1992). A school district may be liable under Title IX for sexual harassment or abuse committed by a teacher where an "appropriate person" with authority to take corrective action has actual knowledge of the misconduct and responds with deliberate indifference. Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 285 (1998).

First, an "appropriate person" is an official of the funding recipient who has authority to institute corrective measures on the school district's behalf. Id. at 289. The Fifth Circuit has explicitly stated:

> when a teacher sexually abuses a student, the student cannot recover from the school district under Title IX unless the school district actually knew that there was a substantial risk that sexual abuse would occur. In requiring actual knowledge, we reject the district court's theory that agency law can substitute imputed discriminatory intent for actual discriminatory intent in Title IX cases.

Rosa H. v. San Elizario Indep. Sch. Dist., 106 F.3d 648, 652–53 (5th Cir. 1997). This case also clarifies that actual knowledge under Title IX does not require that a school board member personally know of the misconduct, but knowledge by any school employee is

not sufficient. <u>See id.</u> at 660. Rather, liability turns on whether a school official, vested by the school board with supervisory authority over the alleged wrongdoer and the power to take corrective action, had actual knowledge of the abuse and failed to act. <u>See id.</u>

Second, deliberate indifference means that the school board cannot be liable if "the official with authority to take corrective action responds reasonably to a risk of harm, 'even if the harm ultimately was not averted.'" <u>Doe v. Edgewood Indep. Sch. Dist.</u>, 964 F.3d 351, 359 (5th Cir. 2020). Deliberate indifference is a high standard. <u>See id.</u>

Applying the Title IX framework, the Court finds that T.D. has plausibly stated a claim. The Complaint alleges that, prior to the incident involving T.D., complaints were made regarding Gryder's inappropriate conduct toward other students and that CPSB failed to take corrective action, thereby allowing Gryder to continue teaching young students. <u>See</u> Record Document 1 at ¶¶ 16–17, 35. Accepting these allegations as true, T.D. has plausibly alleged that CPSB had actual knowledge of misconduct posing a substantial risk of sexual abuse and responded with deliberate indifference.

At the Rule 12(b)(6) stage, the Court declines to require T.D. to plead the precise manner in which parents of other children submitted prior complaints or to identify the specific CPSB official who received those prior complaints, as those facts concern the internal allocation of reporting and disciplinary authority within the school system and are more appropriately developed through discovery. Whether the alleged complaints were communicated to an official with authority to institute corrective measures, and whether CPSB's response was clearly unreasonable, are factual questions more appropriately

addressed at summary judgment.[1] Accordingly, T.D. has stated a plausible Title IX claim, and CPSB's motion to dismiss is **DENIED** as to that claim.

    a.  <u>State Law Claims</u>

Plaintiffs also assert claims under Article I, §§ 2 and 20 of the Louisiana Constitution, as well as various state law tort claims, and they seek to hold CPSB vicariously liable under Louisiana law. <u>See</u> Record Document 1 at ¶¶ 44–50. These claims arise under state law and are not governed by <u>Monell</u>, which applies only to claims brought under 42 U.S.C. § 1983. CPSB does not separately move to dismiss Plaintiffs' Louisiana constitutional claims or their state law tort claims, nor does it advance substantive arguments addressing the sufficiency of those claims under Louisiana law. Accordingly, the Court does not address the merits of Plaintiffs' Louisiana constitutional or state law tort claims at this stage, and those claims remain pending.

---

[1] The Court's conclusion that T.D. has plausibly alleged actual knowledge for purposes of Title IX does not conflict with its determination that Plaintiffs failed to plead municipal liability under <u>Monell</u>. Title IX and § 1983 impose distinct standards. Under Title IX, liability may attach where an official vested with authority to supervise the alleged wrongdoer and take corrective action has actual knowledge of sexual misconduct and responds with deliberate indifference. <u>See</u> <u>Gebser</u>, 524 U.S. at 285. By contrast, <u>Monell</u> requires allegations tying knowledge or deliberate indifference to a final policymaker. <u>See</u> <u>Valle</u>, 613 F.3d at 541–42. Plaintiffs' allegations regarding prior complaints are sufficient, at the pleading stage, to support actual knowledge by an appropriate official for purposes of Title IX, but do not plausibly allege knowledge or ratification of a member of the CPSB itself, as the final policy maker, as required under <u>Monell</u>.

**CONCLUSION**

For the reasons explained above, CPSB's Motion to Dismiss (Record Document 8) is **GRANTED IN PART and DENIED IN PART**. The Motion to Dismiss is **GRANTED** as to all claims asserted against CPSB under 42 U.S.C. § 1983, including Plaintiffs' federal constitutional claims and all § 1983 theories premised on municipal liability, failure to train, supervise, prevent, protect, or implement policies. All such claims are **DISMISSED**. Further, the Motion to Dismiss is **GRANTED** as to any Title IX claims asserted by S.D. and B.L.R. in their individual capacities, and those claims are **DISMISSED**.

The Motion to Dismiss is **DENIED** as to T.D.'s claim under Title IX of the Education Amendments of 1972, and that claim shall proceed. Further, Plaintiffs' claims asserted under Article I, §§ 2 and 20 of the Louisiana Constitution, as well as Plaintiffs' state law tort claims asserted against CPSB, are not addressed in the Motion to Dismiss and therefore remain pending.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 29th day of December, 2025.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE